**William H. DOYLE, Petitioner,**

v.

**WARDEN, FCI Victorville, et al., Respondents.**

**No. CV 05–8701–GHK(E).**

United States District Court, C.D. California.

Aug. 17, 2006.

---

William H. Doyle, Adelanto, CA, Pro se.

Vince Farhat, Office of the United States Attorney, Criminal Division, Los Angeles, CA, for Respondents.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

KING, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that a conditional writ of habeas corpus is granted. Respondent shall release and discharge Petitioner from his sentence in case number SA–74–CR–295 unless, within ninety (90) days of the date the Judgment herein becomes final: (1) Petitioner is brought before the Parole Commission for a noticed hearing to recalculate Petitioner's sentence in case number SA–74–CR–295 in a manner consistent with the Report and Recommendation, or (2) the Bureau of Prisons recalculates Petitioner's sentence in case number SA–74–CR–295, crediting Petitioner for all street time subsequent to the initial revocation of Petitioner's special parole.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Report and Recommendation of United States Magistrate Judge and the Judgment by United States mail on Petitioner and all counsel of record.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## JUDGMENT

Pursuant to the Order Adopting Findings, Conclusions and Recommendations of United States Magistrate Judge,

IT IS ADJUDGED that a conditional writ of habeas corpus is granted. Respondent shall release and discharge Petitioner from his sentence in case number SA–74–CR–295 unless, within ninety (90) days of the date the Judgment herein becomes final: (1) Petitioner is brought before the Parole Commission for a noticed hearing to recalculate Petitioner's sentence in case number SA–74–CR–295 in a manner consistent with the Report and Recommendation, or (2) the Bureau of Prisons recalculates Petitioner's sentence in case number SA–74–CR–295, crediting Petitioner for all street time subsequent to the initial revocation of Petitioner's special parole.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable George H. King, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## PROCEEDINGS

Petitioner, a federal prisoner, filed a "Petition for Writ of Habeas Corpus" on

December 13, 2005 ("Petition"). Respondent filed an Answer on February 24, 2006 ("Answer"). Petitioner filed a Traverse ("Traverse") on March 9, 2006.

## BACKGROUND

On March 19, 1975, a federal court sentenced Petitioner in case number SA–74–CR–295 to an eight-year term of imprisonment followed by a 20–year term of special parole for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 (Exhibit A to Answer). Petitioner's term (exclusive of special parole) expired on October 17, 1982, and Petitioner began serving special parole on that date (Exhibits A and D to Answer).[1]

On May 26, 1983, Petitioner entered a plea of guilty to another charge of possession with intent to distribute methamphetamine (Exhibit E to Answer). The Court sentenced Petitioner to a prison term of three years, plus a five-year special parole term, to run consecutively with Petitioner's existing sentence (*Id.*).

As a consequence of the 1983 offense, the United States Parole Commission ("Parole Commission") revoked Petitioner's special parole and, in accordance with 21 U.S.C. § 841(c), disallowed any credit for the "street time" Petitioner had spent on parole (Exhibits F and G to Answer). At the time of the revocation, section 841(c) provided:

> A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term ... shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) (1982).[2]

On April 5, 1985, immediately after Petitioner completed the prison term imposed in 1983, the Parole Commission purported to return Petitioner to special parole for

---

1. The Comprehensive Drug Abuse Prevention and Control Act of 1970 introduced special parole. *See* Pub.L. 91–513, 84 Stat. 1236, 1262 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566. Unlike regular parole, which involves release from incarceration prior to the end of a term, special parole is a sanction imposed *in addition* to any term of imprisonment. As the Seventh Circuit explained:

   > Three things are "special" about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole; as a rule, however, persons serving [regular] parole

   are returned to prison only for the remainder of their term, for the clock runs continuously.

   *See Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996); *see also Gozlon–Peretz v. United States,* 498 U.S. 395, 399–403, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (discussing special parole); *Fowler v. United States Parole Comm'n,* 94 F.3d 835, 839–40 (3rd Cir.1996) (same).

   In the 23 years since Petitioner began serving his special parole term, Petitioner has returned to custody numerous times because of parole violations. *See* Exhibits F, G, K, L, N, O, P, R, S, U, V, Z, BB, DD, EE, GG, and HH to Answer.

2. Although Congress repealed this provision in 1984, the provision remains applicable to sentences for criminal offenses committed before November 1, 1987. *See* Pub.L. No. 98–473, tit. II, § 224(a)(2), formerly § 224(a)(6),

the 1975 conviction (Exhibit H to Answer, p. 16, 20).[3] Petitioner's special parole then was scheduled to expire on April 5, 2005 (Exhibit H to Answer, p. 17; Exhibits I and J to Answer).

On June 27, 1991, Petitioner returned to custody because of further parole violations (Exhibit K to Answer). By Notice of Action dated October 10, 1991, the Parole Commission again revoked Petitioner's special parole and disallowed any credit for street time (Exhibit L to Answer). Petitioner remained in custody until his re-release on special parole on June 26, 1992 (Exhibit M to Answer). Petitioner's special parole then was projected to expire on October 17, 2008 (Exhibit H to Answer, p. 15).

Meanwhile, a split emerged in the circuit courts concerning whether the Parole Commission has the authority under section 841(c) to impose a **second** term of special parole after revoking the original term of special parole. The majority of the circuit courts addressing the issue held that no such authority exists. *See United States v. Robinson,* 106 F.3d 610, 612–13 (4th Cir.1997) (holding that when the Parole Commission revokes a special parole term under section 841(c), nothing in the statute authorizes a second special parole term); *Fowler v. United States Parole Comm'n,* 94 F.3d 835, 839–41 (3rd Cir. 1996) (same, explaining that "the issue is not the availability of parole under Section 841(c), but the nature of the parole that is specifically contemplated by that statute"); *Evans v. United States Parole Comm'n,* 78 F.3d 262, 264–65 (7th Cir.1996) (same); *Artuso v. Hall,* 74 F.3d 68, 71 (5th Cir. 1996) (same); *but see Billis v. United States,* 83 F.3d 209, 211 (8th Cir.), *cert. denied,* 519 U.S. 900, 117 S.Ct. 252, 136 L.Ed.2d 179 (1996) (holding that Parole Commission has authority to reimpose special parole under section 841(c)); *United States Parole Commission v. Williams,* 54 F.3d 820, 824 (D.C.Cir.1995) (same). The Ninth Circuit eventually adopted the majority view, holding that the Parole Commission lacks the authority to impose a second term of special parole. *See Robles v. United States,* 146 F.3d 1098 (9th Cir. 1998) ("*Robles* ").

Petitioner returned to custody on January 19, 1999 (Exhibit U to Answer). After a hearing, the Parole Commission again revoked Petitioner's special parole (Exhibit V to Answer). This time, however, the Commission credited Petitioner's street time. *Id.* Apparently bowing to the authority of *Robles,* the Commission explained: "[Petitioner's] parole was converted to regular parole because circuit law that applies to the place of [Petitioner's] incarceration or parole, or to which [Petitioner] may be released in the future, requires the above order." *Id.* The Commission also converted Petitioner's special parole to a term of imprisonment with eligibility for regular parole under 18 U.S.C. § 4208(a) (Exhibit V to Answer).[4]

---

98 Stat.1987, 2030 (1984), as renumbered by Pub.L. No. 99–570, tit. I, § 1005(a)(2), 100 Stat. 3207–6 (1986) (the "Sentencing Reform Act").

**3.** The Parole Commission purported to return Petitioner to special parole in accordance with its regulations, which provide:

> Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term as provided in Section 2.52, and subject to reparole or mandatory release under the Special Parole Term.

*See* 28 C.F.R. § 2.57(c) (emphasis added); *see also* 28 C.F.R. § 2.52 (providing the Parole Commission with the power to revoke parole where it finds, by a preponderance of the evidence, that a parolee has violated the terms of his or her parole).

**4.** The Parole Commission referred Petitioner's case to the Bureau of Prisons for sentence recalculation in accordance with its Notice of Action. *See* Exhibit W to Answer (noting

On May 19, 2000, the Parole Commission released Petitioner on regular parole (Exhibit Y to Answer). On January 31, 2001, Petitioner returned to custody because of further parole violations (Exhibit Z to Answer).

While Petitioner was in custody, and prior to the Parole Commission's action on his latest violations, the Supreme Court decided *Johnson v. United States*, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) (*"Johnson"*). *Johnson* settled a split in the circuits concerning whether 18 U.S.C. § 3583(e)(3), a supervised release statute having some similarities to section 841(c), authorizes district courts to impose a second term of supervised release following a recommitment from a prior term of supervised release. Section 3583 empowers a district court to:

> revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision....

*See* 18 U.S.C. § 3583(e)(3) (1988 ed., Supp. V). The *Johnson* Court determined that section 3583 authorizes a court to impose successive terms of supervised release. *Id.* at 703–13, 120 S.Ct. 1795.

By Notice of Action dated March 23, 2001, the Parole Commission found that Petitioner again had violated the terms of his parole (Exhibit AA to Answer). Opining that *Johnson* "invalidat[ed]" *Robles*, the Parole Commission: (1) vacated three prior notices that had converted Petitioner's special parole terms to regular parole terms, and ordered the time spent during these prior parole terms forfeited; and (2) converted Petitioner's regular parole back to special parole (Exhibits AA and BB to

Answer). Petitioner remained in custody until the Parole Commission released Petitioner, purportedly on special parole, on May 31, 2001 (Exhibit CC to Answer).

Petitioner returned to custody on June 27, 2005 (Exhibit GG to Answer). By Notice of Action dated November 14, 2005, the Parole Commission again revoked Petitioner's special parole, disallowed credit for street time, and set a new parole date of June 26, 2006 (Exhibit HH to Answer). Petitioner appealed the November 14, 2005 Notice, asserting that his special parole, which previously had been converted to regular parole, should remain regular parole (Exhibit II to Answer). The National Appeals Board affirmed the Parole Commission's decision (Exhibit JJ). Petitioner then filed the present Petition.

### PETITIONER'S CONTENTIONS

Petitioner challenges the execution of his sentence, claiming that the Parole Commission lacked authority to sentence Petitioner to special parole after revoking Petitioner's original special parole term. Petitioner also challenges the Parole Commission's disallowance of street time credits.

### STANDARDS OF REVIEW

█ Federal courts properly may review a Parole Commission decision where the issue is "whether the Commission acted outside its statutory authority or committed a constitutional violation." *Rizzo v. Armstrong, supra,* 921 F.2d at 858; *see also Wallace v. Christensen,* 802 F.2d 1539, 1552 (9th Cir.1986) (*en banc*). Petitioner contends that, in defiance of *Robles,* the Parole Commission acted outside its

---

"[Petitioner's] sentence has been recalculated, in conformity with recent court decisions in the United States Court of Appeals, to treat all paroles following the original revocation of [Petitioner's] special parole term as periods of regular, not special, parole."). On appeal, the National Appeals Board corrected the Parole Commission's recalculation (Exhibit X to Answer).

statutory authority under section 841(c) by reimposing a special parole term on Petitioner. Thus, federal court review of Petitioner's contention is proper. *See Rizzo v. Armstrong*, 921 F.2d at 858; *see also Robles*, 146 F.3d at 1100.

Because *Robles* already decided the operative legal issue in favor of the position espoused by Petitioner, this Court must grant the Petition unless: (1) an *en banc* panel of the Ninth Circuit expressly has overruled *Robles*; or (2) an intervening Supreme Court decision has undermined *Robles*. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir.2003) (*en banc*). No Ninth Circuit *en banc* panel has overruled *Robles*. Respondent argues that *Johnson* has undermined *Robles*.

■ Where there is intervening Supreme Court authority, "the issues decided by the higher court need not be identical in order to be controlling." *Id.* at 900. To be controlling, however, the intervening authority "must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are **clearly irreconcilable**." *Id.* (emphasis added); *see also Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005) (explaining that the *Miller* Court announced its rule "to guide three-judge panels and **district courts** in deciding which precedents were binding on them") (emphasis added).

Stated simply then, the issue in the present case is whether *Robles* is "clearly irreconcilable" with *Johnson*.

## DISCUSSION

For the reasons discussed below, the Court should grant a conditional writ of habeas corpus.

### I. *Robles is Not Clearly Irreconcilable with Johnson.*

■ Respondent argues that *Robles* is irreconcilable with *Johnson* because *Ro-*

*bles* purportedly was based on an interpretation of 18 U.S.C. § 3583 that *Johnson* overruled (Answer, p. 18). Respondent's argument must be rejected.

The *Robles* Court did not base its opinion exclusively, or even principally, on an interpretation of section 3583. Rather, the *Robles* Court based its holding principally on the assertedly "clear and unambiguous" language of section 841(c), language nowhere appearing in section 3583. *Robles, supra*, 146 F.3d at 1100–01. Section 841(c) provides that when special parole is "revoked ... the **original** term of imprisonment shall be increased by the period of the special parole term and the resulting **new** term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the **new** term of imprisonment." *See* 21 U.S.C. § 841(c) (emphasis added). The *Robles* Court found in this language no authorization for the creation of a new term of special parole or for the reinstatement of an old one. The *Robles* Court reasoned:

> When [special parole] is revoked, the "original" term of imprisonment is increased by the entire term of the special parole, resulting in a "new term of imprisonment." ... The "new term of imprisonment" gives the Parole Commission the power it normally has when dealing with a fixed term of imprisonment: it can require the prisoner to serve the full term, or it can release him or her on regular parole for part of that term. That is what the statute means when it states that the "person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment." Moreover, it is only upon the first revocation of special parole that the special parole term can be added to increase the "original" term of imprison-

ment. **An original term can be augmented only once; after that it is not original.**

*Id.* at 1100 (emphasis added).

In construing section 3583, *Johnson* did nothing to undermine the *Robles* Court's reasoning that section 841(c) expressly differentiates between an "original term" and a "new term." *Johnson* could not undermine this reasoning because section 3583 does not contain the language "original term" or "new term," and *Johnson* did not purport to interpret section 841(c). *Johnson*, 529 U.S. at 711 n. 11, 120 S.Ct. 1795 (acknowledging a line of cases, including *Robles*, as having determined that Parole Commission regulations are inconsistent with section 841(c)).

Not only did *Robles* rely on language in section 841(c) nowhere contained in section 3583, but *Johnson* relied on language in section 3583 nowhere contained in section 841(c). To discern implicit authority in section 3583 to impose supervised release following revocation, the *Johnson* Court departed from the "conventional" meaning of the term "revoke." The *Johnson* Court read this term to mean "to recall" or "to summon back," rather than "to terminate." The *Johnson* Court based this departure on, *inter alia*, the text of section 3583. In particular, the *Johnson* Court emphasized that when Congress intended the meaning "terminate" elsewhere within section 3583(e), Congress employed the word "terminate," rather than the word "revoke." *Id.* at 707, n. 9, 707–10, 120 S.Ct. 1795. Section 841(c) is not subject to any comparable textual analysis, for the word "terminate" does not appear in section 841(c).[5] Given the principal rationales of the *Robles* and *Johnson* decisions, and the critical differences in statutory language between sections 841(c) and 3583, this Court is un-

able to conclude that *Robles* and *Johnson* are "clearly irreconcilable."

*Johnson* does undermine part of the *Robles* opinion, but only a nonessential part. After the *Robles* Court concluded that the unambiguous language of section 841(c) dictated the conclusion that the Commission has no authority to reimpose special parole, the *Robles* Court added that this conclusion was "strengthened" by cases construing the supervised release statute, section 3583. The fact that *Johnson* later overruled these cases does not make *Johnson* "clearly irreconcilable" with *Robles*. The overruling merely makes *Johnson* irreconcilable with a nonessential, additional support for the *Robles* Court's conclusion, leaving intact the *Robles* Court's essential theory and reasoning. Consequently, this Court remains bound by *Robles*. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.2001) (district judge may not "disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue"); *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987) ("[d]istrict courts are, of course, bound by the law of their own circuit"); *cf. Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 447–48 (2nd Cir.1995) (when an intervening case undermines one rationale for a prior decision, but does not affect alternate rationales, the prior decision remains in force for purposes of res judicata); *Marker v. Reilly*, 2004 WL 846699 (E.D.Pa. Apr. 20, 2004) (adhering to a pre-*Johnson* Third Circuit precedent construing section 841(c)).

## II. This Court Cannot Defer to the Parole Commission's Interpretation of Section 841(c).

Respondent argues that even if *Johnson* did not abrogate *Robles*, the Parole Com-

---

5. Thus, the fact that the *Johnson* Court found the term "revoke" as used in section 3583 to be ambiguous does not mandate the conclu-

sion that the term "revoke" is ambiguous as used in section 841(c).

mission's interpretation of section 841(c) is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (*"Chevron"*). Respondent's argument must be rejected.

■ Deference to an agency's statutory interpretation is possible only where there exists an ambiguity in the statute. *See Chevron, supra*, 467 U.S. at 842–43, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"); *Sierra Club v. U.S. Forest Service*, 93 F.3d 610, 612 (9th Cir. 1996) ("only if the language [of the statute] is ambiguous do we consider statutory history or agency interpretations"). As noted above, the *Robles* Court explicitly found that the language of section 841(c) is clear and unambiguous. *Robles*, 146 F.3d at 1100. Therefore, *Chevron* deference has no legitimate place in the analysis of the present case. *Id.; see also National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 2700, 162 L.Ed.2d 820 (2005) (where a prior court decision "holds that [the court's] construction follows from the unambiguous terms of the statute" such "prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference"). The *Robles* Court refused to accord *Chevron* deference to the Commission's interpretation of section 841(c)[6]; this Court must echo that refusal. *Id.; see also Acosta v. Gonzales*, 439 F.3d 550, 553 n. 4 (9th Cir.2006) ("an agency is not owed deference when the issue is the interpretation of Circuit law rather than the statute").

## CONCLUSION

The Ninth Circuit (*en banc*) may change the rule of *Robles*,[7] but neither the Parole Commission nor this Court lawfully may do so. For all of the foregoing reasons,[8] IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting a conditional writ of habeas corpus.

April 24, 2006.

---

6. *Robles* at 1100 ("Because the statute is clear and unambiguous, the Parole Commission's regulation is invalid insofar as it authorizes a second special parole" [citing other circuit decisions rejecting *Chevron* deference to the Commission's interpretation of section 841(c) ]).

7. Under a less stringent standard than the standard binding this Court, the Second Circuit changed its construction of section 841(c) after *Johnson. See Rich v. Maranville*, 369 F.3d 83, 90 n. 7 (2nd Cir.), *cert. denied*, 543 U.S. 913, 125 S.Ct. 233, 160 L.Ed.2d 193 (2004) (Second Circuit panel may refuse to follow prior Second Circuit decision whenever "an intervening Supreme Court case casts

doubt on the prior ruling") (citation and quotations omitted).

8. The Court need not and does not reach the issue of whether, even if the Commission could reimpose a special parole term with a consequent disallowance of street time, the Commission properly could do so years after having purported to release the prisoner on regular parole. *See Gillmore v. United States Parole Commission*, 124 Fed.Appx. 941, 942 (6th Cir.2005) (indicating that the Commission may not convert a regular parole into a special parole retroactively). (The Sixth Circuit's Court Rules do not prohibit the citation of unpublished opinions. *See* Sixth Cir. Ct. R. 28(g)).